UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Piper A. Rountree, | § | |
| PLAINTIFF | § | COMPLAINT, |
| V. | § | MOTION FOR |
| | § | INJUNCTION AND |
| HAROLD CLARK, JOHN JABE, | § | RESTRAINING ORDER |
| WENDY HOBBS, D. RADCLIFF-WALKER, | § | AND |
| T. COX, K. STAPLETON, J. BLAND, | § | JURY DEMAND |
| D. CARTER, P. SOUKUP, Ms. SNOW, | § | |
| S. HORN and V. Booker | § | |
| DEFENDANTS | § | |

## ORIGINAL COMPLAINT

## AND MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND INJUNCTION

NOW COMES REV. DR. PIPER A. ROUNTREE, PLAINTIFF PRO SE, AND FILES THIS HER ORIGINAL COMPLAINT, MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND INJUNCTION AGAINST THE ABOVE NAMED DEFENDANTS AND IN SUPPORT HEREOF SHOWS THE FOLLOWING:

## INTRODUCTION

① This is an action by an inmate of the Fluvanna Correctional Center for Women "FCCW" of the Virginia Department of Corrections ("VDOC") challenging the course of actions and practices of officials of the VDOC which have deprived and continue to deprive Plaintiff of her 1st, 4th, 6th, 8th and 14th Amendment rights guaranteed her under the U.S. Constitution, as well as her federal and state contract rights due her as an inmate under the care and custody of the VDOC while such deprivations and infringements are not and have not been justified for legitimate security concerns.

② Additionally, where the Court in the Western District of Virginia entered a judgment against such officials of the VDOC in National Lawyers Guild, ET al. v. Gene Johnson, et al., (W.D. VIRGINIA) CAUSE No. 3:09-CV-00068, Defendant S. Horn has specifically stated that "the order does not apply to him" and he "refuses to comply with it", with his actions and omissions being supported and furthered by the other Defendants, as set forth herein. Plaintiff maintains that Defendants have failed to comply with such order, have interfered with Plaintiff's attempts to seek redress for such non-compliance and such non-compliance and interference serves no penological purpose.

③ Both before and after the NLG judgment granting access to books and legal resources, Plaintiff has requested access

to books, educational and legal resources only to have
this access denied, unconstitutionally restricted and
retaliated against by Defendants without penological purpose.
Plaintiff, when seeking access to the court system in a
meaningful manner has been and continues to be denied,
hindered and retaliated against by Defendants without
penological purpose. Her attempts to seek legal counsel,
use the United States Mail System; meaningfully access
the informal or formal VDOC grievance systems, or VDOC
law library have been denied, interfered with or unconsti-
tutionally restricted without legitimate security reasons.
Plaintiff's attempts to exercise her religious practices
and have access to services and programs in an equal manner
as do men at similar institutions have been unconstitutionally
restricted.

(4) Defendants have furthered violated Plaintiff's rights
under the Religious Land Use and Institutionalized Persons
Act, the Americans with Disabilities Act and federal or
State warranty laws where Plaintiff is a third party beneficiary
to contracts Defendants have made on her behalf and have
breached implicit agreements within such contracts to
Plaintiff's harm and injury.

(5) Where the policies and practices of Defendants as described
herein, such as retaliations and other punitive / restrictive
actions taken against Plaintiff or her associates for seeking

③

this present relief, pose an immediate threat to Plaintiff's welfare, including her ability to pursue and maintain protection for her legal rights, Plaintiff requests an exparte Temporary Injunction to be followed by a Permanent Injunction, Restraining Order and Declaratory Judgment with such other and further enumerated or merited relief as this Court deems warranted; especially considered that the Defendants in this action have total control over Plaintiff's access to this event, to the mail, phones, religious and educational material and welfare in general as set forth herein.

(6) Defendants' policies, practices and course of conduct generally demonstrate a conflict of interest violating Plaintiff's constitutional and other legal rights and do not serve any legitimate penological interests.

## JURISDICTION

⑦ This action arises under the 1st, 4th, 6th, 8th and 14th amendments to the U.S. Constitution, 42 U.S.C. §1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), Federal and State Warranty Laws and the Americans with Disabilities Act. This court has further jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3) and 28 U.S.C. §2201 ~ §2202.

## VENUE

⑧ Venue properly lies in this District pursuant to §127 FR which states that those parties and events which are within the geographical control of Fluvanna County shall be within the venue of the Western District of VA (also pursuant to 42 U.S.C. §1391(b)(2).

## PARTIES

⑨ REV. DR. Piper A. Rountree, PLAINTIFF PRO SE, is a historically active education law attorney, certified and experienced court mediator specially chosen and employed by the Harris County, Texas Judiciary, educator and ex-prosecutor, prior U.S. ambassador, ordained monastic and inmate at the Fluvanna Correctional Center for Women (hereinafter "FCCW"). She has been a licensed non-denominational minister for over 12 years and her Buddhist vocation and avocational practices are sincerely held. She is a resident of Travis County, Texas.

5

while Rev. Dr. Rountas is an attorney, she has not been practicing nor has had adequate access to the legal system as described herein. Rev. Dr. Rountas has been disbarred in one jurisdiction due to her conviction and failure to file reporting documents she never received while at FCCW. Thus, she files as an inmate, due to her incarcerated status and disability caused by incarceration. She is located at 144 Prison Lane, Troy, VA. 22974 (Fluvanna Correctional Center for Women).

ALL DEFENDANTS ARE EMPLOYEES OF THE VIRGINIA DEPARTMENT OF CORRECTIONS AND CAN BE REACHED THROUGH THEIR LEGAL REPRESENTATIVE, THE ATTORNEY GENERAL, 900 E. MAIN STREET, RICHMOND, VA 23219.

(10) Defendant Harold Clark is the Director of the VDOC and is responsible for the implementation and enforcement of all VDOC policies and procedures to which this matter pertains. At all times relevant to this complaint, he was acting under color of state law. He is sued in his individual and official capacity.

(11) Defendant John Jabe is the Deputy Director, Division of Operations of the VDOC and has been at all times relevant to this complaint. Mr. Jabe is responsible for matters concerning the inmates' access to publications and mail. At all times relevant, he is charged with the protection of the inmates' constitutional rights, specifically including ensuring that they have meaningful access to the judicial

system, as well as meaningful and equal access to recreational and religious practices. At all times relevant to this complaint, he was acting under color of state law. He is sued in his individual and official capacity.

(12) Defendant Wendy Hobbs has been at all times relevant to this complaint the Warden at FCCW. As warden, she is charged with the responsibility to make or delegate initial decisions to allow or disallow mail, publications and property, access to the judicial system as well as meaningful and equal access to recreation and religious practices at FCCW. At all time relevant to this complaint, she was acting under color of state law. She is sued in her individual and official capacities.

(13) Defendant T. Cox was the Operations Officer at FCCW. At such times relevant to this complaint, she was given authority over FCCW inmates' access to mail and publications and the creation and enforcement of policies concerning access to the judicial system, religious and recreational rights and procedures at FCCW. Policies cover both inmates' rights and Officers' obligations. At all times relevant to this complaint she was acting under color of state law. She is sued in her individual and official capacities.

(14) Defendant K. Stapleton became the Operations officer at FCCW with duties and obligations over lapping T. Cox,

before and after T.Cox left in January 2011.   At all times relevant to this complaint, she was given authority over FCCW inmates' access to mail and publications and the creation and enforcement of policies concerning access to the judicial system, religious and recreational rights and procedure at FCCW, These policies cover both inmates' rights and officers' obligations. At all times relevant to this complaint she was acting under color of state law. She is sued in her individual and official capacities.

(15) Ms. Soukup has been the grievance coordinator at FCCW along with Ms. Snow at all times relevant to this lawsuit. In such position, both individually were responsible for ensuring that complaints were accepted and grievances responded to timely and free from retaliations from officers who would take negative action against inmates for filing such complaints. At all times relevant, Ms. Soukup and Ms. Snow were acting under color of state law. Both Ms. Soukup and Ms. Snow are sued in their individual and official capacities.

(16) Defendant D. Radcliffe-Walker has been the Assistant Warden at FCCW at all times relevant to this complaint. As assistant warden, she is charged with assisting and completing the duties of the Warden, especially as it

concerns protecting the inmates and seeing to their welfare and treatment. She is charged with implementation of the Warden's policies and decisions. At all times relevant, she was acting under color of state law. She is sued in her individual and official capacities.

(17) Defendant Lt. Bland has supervisory authority over Sergeants and officers at FCCW. In this position he has held the responsibility to determine the manner and method programs and services are to be held, given or provided at FCCW. In this position, he is responsible for safeguarding the inmates' rights and ensuring officer's compliance. At all times relevant to this complaint, he was acting under color of state law. He is sued in his individual and official capacity.

(18) Defendant D. Carter is responsible for the law library procedures and operations as well as all informational and legal postings at FCCW. She is responsible for ensuring inmates' access to the judicial system in a meaningful and timely manner. She is responsible for protecting the inmates' privacy and material concerns regarding their legal research in the law library. At all times relevant to this complaint, she was acting under color of state law. She is sued in her individual and

official capacities.

(19.) Defendant S. Horn is the Sergeant delegated the authority over approving/disapproving incoming and outgoing inmate property. His previous position at FCCW was that of investigator. In such capacity as investigator, he determined which inmate mail was distributed to inmates and which was rejected, before and after opening and reading the mail. Whether or not in an investigatory position, he has consistently maintained wide authority to enact punitive sanctions over inmates, their jobs, their families, their religious practices, legal research and filings as well as their family visits and communications. At all times relevant to this complaint, he was acting under color of state law. S. Horn is sued in his individual and official capacities.

(20.) Defendant V. Booker is a correctional officer under the direct supervision of S. Horn at FCCW, and has been at all times relevant to this complaint. In this capacity, she distributes or withholds property to and from inmates and follows her supervisors directives to confiscate items or penalize inmates. In this capacity, she has the obligation and independent authority to report or not take part in illegal abuse or harassment of inmates. At all times relevant to this complaint

she was acting under color of state law.  Defendant V. Booker is sued in her individual and official capacity.

## FACTS

### DEFENDANTS' POLICIES AND PRACTICES

21.) Defendants adopted and promulgated a set of policies and procedures to which they are bound and other to operate under their agency and employment agreements with the State of Virginia and the Federal government to ensure the legal and Constitutional rights of inmates, such as Plaintiff, entrusted Into their care.

22.) These policies and agreements apply to and incorporate the Constitutional and legal rights of inmates in general and apply to Plaintiff.

in particular, who is a beneficiary of the above-mentioned agreements and policies **and** NLG court order.

(23) Within the policy *and* agreements are implied certain warranties owing to Plaintiff through which breach of agreement, breach of policy, violation of Plaintiff's Religious and other Civil Rights Defendants have caused Plaintiff injury and such on-going actions continue to cause her injury and pose a serious threat to her immediate and long-term welfare unless they are ceased.

(24) Defendant's policies 803 z and the court order previously issued in the aforementioned case of NLG v. JOHNSON, et al permit inmates access to publications and books to be sent to inmates by publishers or third parties. Although the NLG case was signed and agreed to in October 2010, FCCW is still only in nominal compliance with the Order. For instance, the order requires that notice of its contents be posted on all inmates' notice boards; this has not been done. The Order requires that copies of Prison Legal News be placed in and made available to inmates in the inmate law library: This has not been done. The order requires that inmates be allowed copies without charge of needed material from this in the law library: This has not been done and greater restrictions to copies have been made on inmates for **any** legal document so that they cannot afford

to meaningfully access the law.

(25) Since Plaintiff arrived at FCCW in 2005, she has been repeatedly obstructed in her attempts to meaningfully access the judicial system. Although Plaintiff repeatedly attempted to contact legal representatives, and they attempted to contact her, mail was not received nor delivered. Of note were the marked lack of communications from the Texas Bar Association which in over 25 years had never failed to deliver repating forms or responses to legal research queries except from the point FCCW took control and responsibility of Plaintiff's mail and legal access.

(26) While Plaintiff has made repeated complaints concerning the matter of the issues herein, her attempts to file legal complaints and follow the official grievance system have been denied and otherwise impeded. In most instances, complaints about access to books, mail, missing legal materials, missing religious items resulted in Sgt. Horn's confiscation of Plaintiff's property and the deliberate intimidation of any known associate of Plaintiff's. In the course of his and Defendants' intimidations and retaliations against Plaintiff, S. Horn repeatedly ransacked Plaintiff's room, took her legal mail, confiscated and disposed of an authorized Bible, confiscated and

destroyed the only pictures Plaintiff owned of her children, damaged and tore apart another Bible of Plaintiff's, repeatedly confiscated authorized and permitted religious books, repeatedly confiscated authorized and permitted sacred texts and educational material, illegally removed Plaintiff to the punitive confines of Segregated Housing when she complained of some of these actions and when she attempted to comply with a court-ordered discovery request. At the time Plaintiff was removed to Segregated Housing (which includes protective custody), legal materials were confiscated, including the subject matter of the discovery request and her legal proceedings interfered with as a result. Defendants further caused Plaintiff to remain in segregation in violation of policies and her rights for almost 40 days on the pretext that her educational level, historical vocational and avocational pursuits as a spiritually dedicated attorney made her a suspected gang member. Such Housing, segregated from general housing was and continues to be punitive and retaliatory in nature where it provided inadequate food, clothing, medicine, access to religious or legal services or practices as well as other educational practices and programs. S. Horn and Defendants have physically and emotionally abused Plaintiff and her family and associates by such pattern and practice of actions, especially and including standing threats of confiscation, interference w/ family connections or other meaningful life pursuits —

(14)

and legal connections and are detrimental rather then Protective of Plaintiff's or others' welfare. On information and belief it is Plaintiff's understanding that S. Horn has justified his behavior to his co-workers saying statements as "If a woman is in prison, she does not deserve to be connected with her friends or family... In fact, if My wife were incarcerated here, I would divorce her."

27) All or virtually all of Plaintiff's disciplinary complaints were filed by S. Horn or at his direction immediately or shortly after Plaintiff complained to him or his administrators about his behavior. Upon service of one of the last "tickets" - Sgt Thomas laughed at the ticket and told Plaintiff it was obvious she had complained about someone, "pissing them off." In one of Plaintiff's last complaints filed herein, Officer Fortune encouraged Plaintiff not to file the complaint for her own welfare because "You know how they do people here: if you file a complaint, they'll just make sure you lose something because of it, something you particularly care about."

28) Plaintiff's legal associates have sent Plaintiff legal mail which was rejected without cause and

and without notice to Plaintiff, contrary to the law or policy. In early 2011, S. Horn continued to reject books and mail despite knowing about and reading the NLG federal court order which directed him, as a VDOC employee and someone who worked under T. Cox directly, to allow us access to books and publications, especially from Prison Legal News. Plaintiff received such books but they were never allowed to be given her. They subsequently went missing.

(29) Plaintiff's limited ability to access legal materials or complete regularly accepted legal documents in a professional and timely manner has hindered and continues to impede her access to the judicial system. Completed legal documents in the control of the law library have repeatedly disappeared at time-sensitive deadlines. Sgt. Horn has, at times, maintained the right to keep legal materials for extended review. Legal appointments are not timely or sufficiently given and before documents are completed, the law library's policy encourages deletion of the material. Complaints and grievances filed regarding legal communication and access have disappeared and/or not been responded to. Copies of documents or evidence are either unavailable, not timely or too costly to effectively access the courts.

Where Plaintiff has been given some access to word processes to create her confidential legal documents, communications or pleadings, Defendants have consistently refused Plaintiff copies of these confidential documents without their prior review of the material and approval of its content. VDOC staff has informed Plaintiff that she may not use the law library for 1983 lawsuits.

30) In Sept. 2011, Plaintiff again complained to K. Stapleton and the Asst. Warden of lack of access and retaliation by officers, S. Horn in particular. Upon receipt of this complaint, Defendants authorized S. Horn and V. Booker to conduct another retaliatory confiscation of Plaintiff's educational and religious items for such lawfully expressed speech. Such actions were deliberately taken to threaten Plaintiff into stopping her complaints that the law and court orders should be followed and were not being at FCCW.

31) As part of Defendants pattern and practice of retaliatory behavior, Plaintiff's welfare was threatened and harmed by "ticketing" her roommate, Robin Martin, for Plaintiff's complaints. Defendants knew that since such "ticket" to Ms. Martin cost her her college scholarship, thousands of dollars in tuition since she would not be permitted to attend classes with a "ticket", loss of her earned good time due to the ticket, Plaintiff's welfare as an inmate at FCCW would be threatened by taking such harmful actions against Plaintiff's associates as a means of retaliation.

32) Subsequent to such lawful complaints about access to mail, Plaintiff's normally submitted and accepted books orders have been rejected since 2011, (September). Additionally books which have otherwise

(17)

been approved and authorized and have been held by Sgt. Horn and not otherwise timely delivered to Plaintiff, if at all.

29. Plaintiff's numerous attempts to seek outside legal assistance have been knowingly and repeatedly intentionally obstructed by Defendants. Plaintiff has either not had her mail sent out or legal mail delivered. On January 6, 2011, Defendant T. Cox informed Plaintiff and her unit manager, Ms. Williams, that someone at FCCW has been signing a refusal of Plaintiff's legal mail on at least one occasion without notice to Plaintiff of such refusal.

30. Plaintiff has recently and repeatedly filed complaints and grievances over the conflicts of interests the VDOC violates in operating the law library, mail system and grievance system as well as resulting violations of hampering Plaintiff's free exercise of religious practices in accessing outside recreation, vegetarian fare on commissary and in the cafeteria and other religious discrimination and resulting violations of her other rights described herein. These complaints and grievances have been rejected or lost, with Warden Hobbs' and Defendants' knowledge and failure to prevent such on-going intentional

18

hindering and depriving Plaintiff of rights, privileges and immunities secured by the Constitution and laws of the United States.

31. Defendants' course and conduct in maintaining and operating a self-biased and corrupt postal system, a meaningless and impaired system of access to the courts (including the operating of the law library, access and cost for legal mail, copies, research, word processing and other methods of communication and research) and an obstructive grievance procedure system violated Defendants' obligation to be free from conduct involving financial or other types of conflict of interest since the manner in which these systems were operated benefitted Defendants to the detriment of Plaintiff's constitutional and other rights

32. That Defendants' course and conduct involved self-dealing, lack of good faith and fair dealing as well as breaching other implied warranties in their employment contracts owed to Plaintiff, they caused Plaintiff harm and violated her legal rights under the laws of the United States.

33. Defendants' course and conduct of actions intentionally or effectively harmed and discriminated against Plaintiff, who, due to her lack of being able to

function with the usual and normal life-skills due to debilitations caused by her incarceration and by her diabetic condition and conditions caused by Defendants as described herein. Plaintiff is a handicapped individual and has been discriminated against due to her handicap.

(34) When Plaintiff asked her counselor for assistance in seeking protection, assistance in accessing the law library and judiciary, D. Flannagan (also a lawyer for the VA. judiciary) was immediately fired in Sept. 2011. This was immediately after she had sent such requests on Plaintiff's behalf to Defendants. This assistance requested from D. Flannagan was no different then that authorized to be given incarcerated men in other VDOC positions D. Flannagan successfully held. VDOC's Defendants discriminate in its standards and services against women.

(35.) Defendants' conduct caused deprivation of Plaintiff's Constitutional and other rights under the laws of the United States.

(36) Defendant's conduct was intentional, grossly negligent and amounted to reckless callous indifference to Plaintiff's rights and welfare.

(37) Defendants' conduct was shockingly excessive, discriminatory, violating Plaintiff's basic human needs and a wanton infliction of pain contrary to acceptable penological purposes.

(38) Defendants' actions and omissions caused, encouraged and ratified a course and practice of continuing harm to Plaintiff.

(39.) Plaintiff incorporates by reference all 163 EXHIBITS attached hereto.

(17)

## EXHAUSTION OF REMEDIES

(40) Defendants maintain two formal grievance systems and two de-facto grievance systems.

(41) Defendants' first formal grievance system is governed by policy 866.1 . Under this system, no "Grievance" may be filed without attaching a successfully completed "Informal Complaint".

(42) Under the first formal grievance system, all "informal complaints" are almost always rejected for one of 15 stated reasons (and all complaints, no matter how written or stated can fall within the 15 stated reasons) so that— based on the same principles which govern carnival games — no grievance can ever adequately or successfully be filed.

(43) When some grievances are allowed to be filed to maintain the appearance of a working grievance system, these grievances are either rejected—again for the 15 reasons or for other reasons such as lack of copies, when Defendants prevent Plaintiff from timely obtaining copies, or for stating that too many issues are raised when in fact the court system requires all facts and issues within a cause of action be raised (the opposite standard

(18)

of the first formal grievance system, or
no grievance is ever reflected as having been
filed.

(44) By rejecting Plaintiff's (attempts to resolve
her issues) informal complaints, Plaintiff has,
where applicable exhausted her administrative
remedies since no Grievance may be filed
without such permitted Informal Complaint.

(45) Plaintiff did file informal complaints and grievances
on all matters herein during the latter part of
2010 and early 2011, whereby all grievances were
lost and otherwise complaints rejected.

(46) Defendants maintain a second system of grievances
for Emergency grievances. Where there is no
appeal from Defendants' response on the Emergency
grievances, these grievances are exhausted at
the level of the response.

(47) Plaintiff has additionally exhausted her administrative
remedies on some of these issues through the
emergency grievance procedure.

(48) Defendant's primary method of issue resolution
is through the use of a form, generally referred to as an "IMS"
this form has a space for the question or concern to
be presented and the form is routed to the
appropriate administrator for a reply.

(49) Where the formal grievance process results in little or no effective conflict or issue resolution, the de-facto grievance system which uses the IMS is the most reliable method of issue resolution; however, many IMS still are not responded to or responded to timely or adequately.

(50) The de-facto grievance system further breaks down when the mail system used to deliver the IMS's — or subsequent letters to officials requesting assistance or resolution — proves to be unreliable as Defendants have ensured theirs to be.

(51) Plaintiff has nevertheless exhausted her administrative appeals to the extent she has been able using both the formal grievance procedures and the de-facto grievance procedures.

## LEGAL CLAIMS

52. Plaintiff realleges and incorporates by reference all prior paragraphs stated herein.

53. Defendants' actions and omissions which have deprived Plaintiff of her right to access the judicial system violated and continue to violate her 1st, 6th, 8th and 14th Constitutional Amendment rights. As a direct and proximate cause of the aforesaid conduct of Defendants, Plaintiff has suffered financial and other injury.

54. Defendants' actions and omissions which have deprived Plaintiff of her right to send and receive mail in a meaningful manner violate and continue to violate her 1st, 6th, 8th and 14th Constitutional amendment rights. As a direct and proximate cause of the aforesaid conduct of Defendants, Plaintiff has suffered financial and other injury.

55. Defendants' actions and omissions which have deprived Plaintiff of her right to meaningfully address grievances and complaints within the VDOC system violate her 1st, 6th, 8th and 14th amendment rights under the Constitution. As a direct and proximate cause of the aforesaid conduct of Defendants, Plaintiff has suffered financial and other injury.

21

56) Defendants' actions and omissions which have deprived Plaintiff of her right to complain and address concerns free from reprisals or retaliation violated and continue to violate her 1st, 8th and 14th amendment rights under the Constitution. As a direct and proximate cause of the aforesaid violations and conduct of Defendants, Plaintiff suffered financial loss and other injury.

57) Defendants' actions and omissions which have deprived Plaintiff of her right to be secure in her person, property and quarters without due process of law violated and continue to violate her 4th, 8th and 14th amendment rights under the constitution. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injury.

58) Defendants' actions and omissions which have deprived Plaintiff of her right to be free from abuse, intimidation and pointed harassment violated and continues to violate her 4th, 8th and 14th constitutional amendment rights. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injury.

59) Defendants' actions and omissions which have deprived Plaintiff of her constitutional rights without due process of law violate and continue to violate her 8th amendment

rights under the Constitution. As a direct and proximal cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injury.

60. Defendants' actions and omissions which have deprived Plaintiff of her right to be free from unequal treatment under the policies and practices of Defendants violated and continue to violate her 1st, 8th and 14th amendment rights to the Constitution. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injury.

61. Defendants' actions and omissions which have deprived Plaintiff of her right to reasonably exercise her sincere religious beliefs violate and continue to violate her 1st, 8th and 14th amendment rights under the constitution. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injury.

62. Defendants' actions and omissions which have deprived Plaintiff of her right to access and maintain books, publications and educational material violate and continue to violate her 1st, 8th and 14th amendment rights under the constitution. As a direct and proximate cause of the aforementioned conduct of

23

Defendants, Plaintiff suffered financial loss and other injury.

(63) Defendants' actions and omissions which have deprived Plaintiff of her right to meaningful recreation opportunities in the same manner as has been provided men at similar institutions violated and continues to violate her 1st, 8th, 14th constitutional amendment rights and rights under RLUIPA and Federal and State warranty laws rights accruing to Plaintiff as a beneficiary to contracts, agreements and orders Defendants have made on benefiting Plaintiff or her behalf. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injuries.

(64) Defendants' actions and omissions which have deprived Plaintiff of her constitutional rights as described above, violated and continue to violate the rights guaranteed her as a handicapped individual under the Americans with Disabilities Act. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and injuries.

(65) Defendants' actions and omissions which have deprived Plaintiff of her constitutional right to exercise free speech as described above, violated and continue to violate her 1st, 8th and 14th amendment rights under the

(24)

Constitution. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injuries.

66. Defendants actions and omissions have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedures of meaningful access to the judicial system so that her 1st, 6th, 8th and 14th amendments rights to the constitution, rights and privileges under Federal and State Warranty laws and rights and privileges under the Americans with Disabilities Act have been violated and continue to be violated. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injuries.

67. Defendants actions and omissions have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedure of meaningfully accessing and receiving mail from the U.S. postal system so that her 1st, 6th, 8th and 14th amendment rights to the constitution, rights and privileges under Federal and State Warranty laws and under the Americans with Disabilities Act have been violated and continue to be violated. As a direct and proximate cause of the aforementioned conduct of

(25)

Defendants, Plaintiff suffered financial and other injuries.

68. Defendants actions and omissions have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedure of meaningfully presenting and resolving complaints and grievances so that her 1st, 6th, 8th and 14th amendment rights to the constitution, rights and privileges under federal and state warranty laws and under the Americans with Disabilities Act have been violated and continue to be violated. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff suffered financial loss and other injuries.

26

## PRAYER

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF respectfully requests the following relief:

69. A judgment be entered and granted in FAVOR of Plaintiff;

70. A declaratory judgment that Defendants' actions and omissions described herein violated Plaintiff's constitutional and other federal rights;

71. A declaratory judgment that all rules, policies and procedures of Defendants' are to be interpreted in favor of granting (Plaintiff) constitutional rights and privileges unless such are specifically denied by statute or law;

72. A declaratory judgment that Defendants' failure to provide Plaintiff a meaningful access to the judicial system violates the 1st, 6th, 8th and 14th amendments to the Constitution and Federal and State Warranty laws;

73. A declaratory judgment that Defendants' failure to provide Plaintiff a meaningful right to send and receive mail violates the 1st, 6th, 8th and 14th amendments to the constitution and Federal and State Warranty laws;

74. A declaratory judgment that Defendants' failure to provide Plaintiff a meaningful method to address complaints and grievances within VDOC violates the 1st, 6th, 8th and 14th amendments to the constitution and Federal and State Warranty laws;

(27)

75) A declaratory judgment that Defendants' cause and practice of maintaining a system of reprisals and retaliations against expression of free and protected speech violates the 1st, 8th and 14th amendments to the Constitution;

76) A declaratory judgment that Defendants' actions and omissions which have deprived Plaintiff of her right to be secure in her person, property and quarters without due process of law violates the 4th, 8th and 14th amendment to the constitution;

77) A declaratory judgment that Defendants' actions and omissions which have deprived Plaintiff of her right to be free from abuse, intimidation and pointed harassment violate the 4th, 8th and 14th constitutional amendments;

78) A declaratory judgment that Defendants' actions and omissions which have deprived Plaintiff of her constitutional rights without due process of law are cruel and unusual punishment to the point of violating the 8th amendment.

79) A declaratory judgment that Defendants' actions and omissions which have deprived Plaintiff of her right to equal treatment violates the 1st, 8th and 14th amendments to the Constitution;

80) A declaratory judgment that Defendants' actions and

28

omissions which have deprived Plaintiff of
her right to reasonably exercise her sincere
religious beliefs violate the 1st, 8th and 14th
amendment to the constitution;

(81) A declaratory judgment that Defendants' action
and omissions which deprive Plaintiff of her
right to access and maintain books, publication
and educational material violate the 1st, 8th and
14th amendment to the constitution;

(82) A declaratory judgment that Defendants actions and
omissions which deprive Plaintiff of meaningful and
equal access to recreational opportunities as is afforded
men at similar institutions violates the 1st, 8th
14th amendments to the constitution, the RLUIPA, as
well as Federal and State warranty laws and rights
accruing to Plaintiff as a beneficiary to contracts,
agreements and orders Defendants have made benefitting
Plaintiff or on her behalf.

(83) A declaratory judgment that Plaintiff as an incarcerated
person at FCCW is a handicapped individual under
the meaning of the Americans with Disabilities Act;

(84) A declaratory judgment that Defendants actions and
omissions depriving her of her constitutional rights
violate her rights guaranteed under the Americans
with Disabilities Act;

(29)

(85) A declaratory judgment that Defendants actions
and omissions which deprived Plaintiff of her
right to exercise free speech violate the 1st, 8th and
14th Constitutional amendments;

(86) A Declaratory judgment that Defendants' actions and
omissions which deprive Plaintiff of her right
to an independent, conflict-free system and procedures
of meaningful access to the judicial system violate
1st, 6th, 8th, 14th amendments to the Constitution,
Federal and State warranty laws and the Americans
with Disabilities Act;

(87) A declaratory judgment that Defendants' actions and
omissions which deprive Plaintiff of her right to
an independent, conflict-free system and procedures of
accessing and receiving mail from the U.S. Postal system
violates 1st, 6th, 8th and 14th amendments to the
Constitution, Federal and State warranty laws and the
Americans with Disabilities Act;

(88) A declaratory judgment that Defendants' actions and
omissions which deprive Plaintiff of her right to
an independent, conflict-free grievance system
violates the 1st, 6th, 8th and 14th amendments to the
constitution, Federal and State warranty laws and the
Americans with Disabilities Act;

(89) A declaratory judgment that Defendants' actions and

(30)

omissions which provide Plaintiff unequal access to or receipt of services, programs, facilities, opportunities, property or privileges and liberties as is provided men in similar institutions violates the 1st, 8th and 14th amendment to the constitution and Federal and State warranty laws.

90  A declaratory judgment that Plaintiff has a right to meaningfully access books and publications pursuant to and as a beneficiary of the federal court order, NLG v. JOHNSON, (W.D.VA.) Cause No. 3:09 CV-00068.

91  A declaratory judgment that Defendants' delay, hindering and failure to comply with the terms of the court order in NLG v. JOHNSON, (W.D.VA.) Cause No. 3:09-CV-00068 or otherwise imposing additional impediments or requirements upon Plaintiff to access, maintain books and publications violates said court order and violates Plaintiff's 1st, 6th, 14th constitutional amendment rights as well as Federal and State Warranty laws.

92  A declaratory judgment that Defendants' actions in providing services, meeting opportunities, commissary food items, meal trays, specially timed meals and general opportunities for religious practice for Jews, Muslims and other faiths, but not for vegetarian Buddhists such as Plaintiff violates her 1st, 8th, 14th constitutional amendment rights as well as Federal and State Warranty laws;

31

93) A declaratory judgment that Plaintiff has a 1st amendment right to receive vegetarian meals according to her sincerely held religious tenets and such is a reasonable accommodation which may not be suspended at Defendants' ease or convenience or lockdowns or change in housing or location;

94) A declaratory judgment that Plaintiff's sincerely held religious tenets and practices are to be reasonably accommodated, permitted and provided for absent compelling state reason to the contrary;

95) A declaratory judgment that the Defendants' course and practice of maintaining a law library (which provides (or lack of timely access to) lack of access to cases and laws of the United States, lack of access to legal treatises, resources (or parties with sufficient ability and experience to provide assistance), lack of free copies as needed and if the legal mail does not provide a meaningful access to the judicial system as Plaintiff has a right to under the 1st, 6th and 14th amendments to the constitution;

## TEMPORARY AND PERMANENT INJUNCTION AND
## RESTRAINING ORDER REQUEST

Plaintiff specifically and further requests a temporary
and Permanent Injunction and Restraining Order on the
following issues due to the immediate threat of serious
and permanent harm to Plaintiff, her associates and her
family which will occur absent immediate court intervention.
Plaintiff requests that

96) Defendants be enjoined to comply with the court
order issued against them in NLG V. JOHNSON,
(W.D. Virginia) CAUSE NO. 3:09 -CV -00068. Specifically,
any VDOC restriction to access to books, educational
or legal materials which - by form, procedure or
other access delay or interference - which is in any way
more restrictive than such court order shall be deemed
to violate such court order and injunction;

97) Defendants be enjoined and restrained from issuing
disciplinary citations ("tickets") against Plaintiff or
her associates (or taking such retaliatory or punitive
actions against them) for seeking this or other legally
protected speech or access to the judiciary;

98) Defendants be enjoined and restrained from revoking
Robin Martin's scholarship, preventing her access to college
educational courses in any manner; Defendants shall

(33)

immediately ensure that Robin Martin is enrolled in all college courses to which she was entitled and able to enroll without delay and without any "ticket" or record of such infraction remaining. Defendants should be enjoined from causing any punitive measures to remain or be taken against Robin Martin;

99) Defendants should be enjoined and restrained from taking any harassing or punitive actions against Plaintiff, her associates or witnesses and affiants to these actions;

100) Defendants should be enjoined and restrained from interfering with Plaintiff's or Plaintiff's associates', (incl. witnesses or affiants to this action) access to the U.S. mail, libraries, phones, publications, classes, work assignments, programs, visitations, religious and other normally scheduled activities or privileges for General Population at FCCW ( such interference would include restricting or discriminatory actions or omissions);

101) Defendants should be enjoined and restrained from changing Plaintiff's or her associates' housing or other status since such actions would immediately result in a suppression of free speech and hinder the Constitutional protections to which Plaintiff and her associates have a right. Defendants should be specifically enjoined from unilaterally changing Plaintiff or her associates, roommates or

34

witnesses' and affiants' roommate assignments, changing housing assignments or location or removing such individuals to any other separated housing (such as anything other than "General Population") or building without such individuals' written consent;

(102) Defendants should be immediately enjoined and restrained from permitting J. Horn contact, care, control over inmates, their families or their property at UDOC in general and in any way affecting, contacting, controlling Plaintiff, her property, her family and associates (and witnesses of affiant) in particular;

(103) Defendants should be enjoined and restrained from restricting, limiting or impairing Plaintiff in her ability to access witnesses or other inmates for the purpose of gathering affidavits or evidence to support this action;

(104) Defendants should be enjoined to immediately permit Plaintiff morning and afternoon daily access to the FCCW law library and related services, including free copies, for the purpose of meaningfully accessing the judicial system; (legal services are to specifically include confidential and timely printouts of cases, documents and drafts in such quantity and manner as Plaintiff requests with use of reliable discs and computer saving software to ensure such meaningful constitutional protection);

105) Defendants should be enjoined and restrained from impairing or in any way limiting Plaintiff's access to or communication with legal, political or religious representatives or associations including family or other individuals providing support;

106) Defendants should be enjoined and restrained from limiting, charging, or pre-viewing the legal mail requested to be sent by Plaintiff through the U.S. mail service. Such injunction should prevent Defendants from opening and reading any such non-delivered, returned legal mail;

107) Defendants should be enjoined and restrained from limiting or charging Plaintiff for legal mail she needs to meaningfully access the judicial system;

108) Defendants should be enjoined to immediately implement psychological and other screening procedures for officers and employees of VDOC which would screen out potentially mentally and emotionally abusive candidates from being accepted into a workforce at FCCW which has total control over such dependent, handicapped and traumatized females such as Plaintiff;

109) Defendants should be immediately enjoined to implement a proactive system of protection for female inmates which does not result in punitive measures - such as change in housing or loss of privileges or status - taken against the victim or related witnesses;

36

(110) Defendants should be immediately enjoined to adopt a meaningful and confidential procedure whereby Plaintiff and other such Petitioners needing to contact witnesses and gather affidavits and evidence for legal proceedings may freely do so without retaliation or punitive measures taken against them;

(111) Defendants should be immediately enjoined and restrained from operating as its own agent for the inmates VDOC U.S. postal service as such position cannot be separated from an inherent conflict of interest to Plaintiff's detriment;

(112) Defendants should be immediately enjoined and restrained from operating as or providing its own "neutral" grievance system as such operations cannot be separated from an inherent conflict of interest to Plaintiff's detriment;

(113) Defendants should be immediately enjoined and restrained from operating and providing its own system of access to legal resources, such as attorneys or a law library, when such self-managed, operated, controlled and supervised system cannot provide meaningfully effective access to the judicial system since such self maintained system involves an inherent conflict of interest to Plaintiff's detriment;

(114) Defendants should be immediately enjoined to provide Plaintiff an independent, conflict-free U.S. postal agent; attorney and legal resources and word processors as needed to meaningfully access the judicial system;

115) Defendants should be immediately enjoined to provide Plaintiff a Vegetarian Buddhist/faith-based diet in a manner which allows her to observe the tenets of her practice with appropriate food selections offered both through the Commissary and through the FCCW Food Services as other faiths are accommodated according to their tenets;

116) Defendants should be immediately enjoined from discriminating against or targeting Plaintiff for her legitimate faith-based practices, choice, requests or maintenance of religious materials and objects and such practices should be reasonably accommodated;

117) Defendants should be immediately enjoined and restrained from adopting or maintaining any policy, procedure, program, service or other opportunity which unequally discriminates against women inmates as compared to those policies, procedures, programs, services and other opportunities provided men inmates of the VDOC;

118) Defendants should be immediately enjoined and restrained from banning Plaintiff from attendance of Christian or other faith based services or programs since such prohibition constitutes unlawful discrimination against Plaintiff as an inter-faith Buddhist and is contrary to her Buddhist tenets which encourage honoring and respecting one's root faith's practices if there is one.

38

## OTHER RELIEF REQUESTED

Plaintiff further requests:

(119) Awarding Plaintiff nominal, compensatory and punitive damages;

(120) Awarding Plaintiff attorney's fees and costs;

(121) Awarding Plaintiff interest on such awards at the highest legal rate until they are fully paid;

(122) Awarding such other and further relief as this Court may deem just and proper;

(123) Provide a trial by jury on all issues so triable.


Respectfully, submitted,

Piper Rountree

REV. DR. PIPER A. ROUNTREE
INMATE, PRO SE
#1004102
FLUVANNA CORRECTIONAL CENTER FOR WOMEN
P.O. BOX 1000
TROY, VA 22974

(39)