**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **PIPER A. ROUNTREE,** | ) | |
| **Plaintiff,** | ) | **CASE NO. 7:11CV00572** |
| **v.** | ) | |
| | ) | |
| **HAROLD CLARKE, *ET AL.,*** | ) | **By: Robert S. Ballou** |
| **Defendants.** | ) | **United States Magistrate Judge** |

## <u>REPORT AND RECOMMENDATION</u>

This case, filed by an inmate proceeding <u>pro se</u>, is before me to conduct an evidentiary hearing on whether the plaintiff, Piper A. Rountree, legally exhausted her administrative remedies or has legal grounds for failing to do so, and to provide a report and recommended disposition on all pending dispositive motions. Rountree filed this action under 42 U.S.C. § 1983 alleging that prison officials interfered with her civil rights related to mail service, access to the law library and legal materials, exercise of religious beliefs, recreation, and accommodation of disabilities, in violation of the Constitution, the Americans with Disabilities Act ("ADA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

The court has referred the case to me for such additional proceedings as are necessary, including conducting an evidentiary hearing, on the issue of whether Rountree exhausted her administrative remedies before filing her claims. <u>See</u> 28 U.S.C. § 636(b)(1)(B). I conducted a hearing on September 5, 2013, heard testimony, and reviewed proffered exhibits on exhaustion. Having carefully reviewed the evidence of record both on the docket and presented at the evidentiary hearing and having considered the legal memoranda and argument of counsel, I find that Rountree did not properly exhaust available administrative remedies as as to the issues raised in all of her claims and that Rountree has not proven by a preponderance of the evidence that these remedies were unavailable to her. Therefore, I **RECOMMEND** that the court find

from the expanded record on exhaustion that the majority of plaintiff's claims must be **DISMISSED** under § 1997e(a) for failure to exhaust administrative remedies. I further **RECOMMEND** that as to the few issues that Rountree did exhaust or that were nongrievable, her complaint must be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b) as legally frivolous or for failure to state a claim.

## I.  PROCEDURAL BACKGROUND

Rountree is an inmate at Fluvanna Correctional Center for Women ("FCCW"). Unlike most inmates, Rountree has a law degree and practiced as an attorney before her incarceration. Her original handwritten complaint, dated November 27, 2011, alleged fifteen "legal claims" against a dozen officials in the Virginia Department of Corrections ("VDOC") administration and at FCCW. A group of defendants waived service of process, but before they filed a responsive pleading, Rountree filed a first amended complaint, dated March 14, 2012. On April 4, 2012, the same defendants answered the first amended complaint and moved for summary judgment under § 1997e(a) for failing to exhaust administrative remedies. The court denied the summary judgment motion without prejudice, and referred the matter to me for further proceedings on the exhaustion issue. Rountree then filed a second amended complaint, dated April 22, 2012, which is currently before the court. Defendant Baskerville, who was served after the evidentiary hearing, has filed a motion for summary judgment adopting the arguments regarding exhaustion made by the other defendants.

Rountree lists the following claims in the second amended complaint ("the complaint") in a section entitled "LEGAL CLAIMS." (ECF No. 31-1, ¶¶ 65-80.)

    1.  "Defendants have conspired to deprive Plaintiff of her civil rights";

    2.  Defendants "have deprived of Plaintiff of her right to access the judicial system";

3.  Defendants "have deprived Plaintiff of her right to send and receive mail in a meaningful manner";

4.  Defendants "have deprived Plaintiff of the right to address grievances and complaints meaningfully within the VDOC";

5.  Defendants have deprived plaintiff of her "right to complain and address concerns free from reprisals and retaliation";

6.  Defendants "have deprived Plaintiff of her right to be secure in her person, property and quarters without due process of law violated";

7.  Defendants have "deprived Plaintiff of her right to be free from abuse, intimidation, and pointed harassment";

8.  Defendants "have deprived Plaintiff of her Constitutional rights without due process of law, violate and continue to violate her 8th Amendment rights";

9.  Defendants "have deprived Plaintiff of her right to be free from unequal treatment under the policies and practices of Defendants";

10. Defendants "have deprived Plaintiff of her right to access and maintain books, publications and educational material"'

11.  Defendants "have deprived Plaintiff of her right to meaningful services and programs, including recreation opportunities, in the same manner as has been provided men at similar institutions" in violation of RLUIPA;[3]

12.  Defendants "have . . . violated and continue to violate the rights guaranteed [Plaintiff] as a handicapped [individual] under the Americans with Disabilities Act";

13.  Defendants "have deprived Plaintiff of her Constitutional rights to exercise free speech;

14.  Defendants "have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedures of meaningful access to the judicial system";

---

[3]  In Claims 11, 14, 15, and 16, Rountree alleges generally that defendants' actions have deprived her of constitutional rights under the First, Eighth, and Fourteenth Amendments, RLUIPA, federal and state "warranty laws," and rights accrued to her as a beneficiary to unspecified contracts or agreements defendants have made.

15. Defendants "have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedure of meaningfully accessing and receiving mail from the U.S. postal system"; and

16. Defendants "have deprived Plaintiff of her right to an independent, conflict and self-interest free system and procedures of meaningfully presenting and resolving complaints and grievances."

As relief, Rountree seeks a long list of declaratory judgments and permanent injunctions, as well as compensatory damages and costs.[4]  (ECF No. 31-1, at ¶¶81-130.)

Rountree's complaint to a great extent lacks the factual detail necessary to provide a basis to determine which events constitute a violation of her constitutional rights under § 1983 or which impose liability upon defendants under the ADA or RLUIPA.  The complaint contains broad sections titled "FACTS" and "LEGAL CLAIMS", but Rountree fails to indicate the particular defendants against whom she brings each of her "LEGAL CLAIMS" and often fails to provide dates on which the alleged violations occurred.   The complaint joins multiple claims against multiple defendants with no regard for the restrictions of Rules 18 and 20 of the Federal Rules of Civil Procedure.[5]

I ordered that Rountree, when presenting her exhibits and witnesses at the evidentiary hearing, "be prepared to identify the specific claims she has asserted, the exhaustion efforts she has made and the reasons why she was unable to exhaust any particular claim."  (ECF No. 59, at 1.)  I also required the parties to present all exhibits at the beginning of the hearing, pre-marked to correspond with their exhibit lists, and directed that I would accept all exhibits into evidence,

---

[4]  By separate orders, the court has denied Rountree's motions interlocutory injunctive relief.

[5]  Under Rule 18(a), which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant.  However, in order to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which governs joinder of parties.  Rule 20(a)(2) permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact.  On its face, Rountree's omnibus complaint does not comply with either of these rules.

absent specific objections, which I intended to resolve before opening statements. (Id. at 2.) Ultimately, neither party objected to the proffered exhibits, and they were all admitted.[6] (See ECF Nos. 52, 54, 64, 65, 66, 67, 68, 69, & 74.)

Rountree prepared and submitted into evidence an exhaustive group of exhibits including a master list which identified each document submitted, the claims to which it applied, the defendants purportedly liable for such claim, and the manner in which it reflected her efforts to exhaust her administrative remedies. I have reviewed each of the exhibits the parties presented at the hearing. I have also considered the testimony of the witnesses for both sides. My findings take into account that testimony, its detail and coherency, and the degree to which it is consistent or inconsistent with other record evidence in the case, as well as the manner in which the witnesses presented their testimony.

## II. THE EVIDENCE RELATED TO EXHAUSTION

### A. The Grievance Procedures

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until she has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a). The VDOC has established a written administrative procedure, which applies to all inmates at FCCW, to address grievances relating to prison conditions and it provides the exhaustion procedures to comply with § 1997e(a). See OP 866.1. (ECF No. 64, Ex. 1 & 2.) The stated purpose of OP 866.1 is to "resolv[e] offender issues and complaints through fair, prompt decisions and actions." OP 866.1(I). The procedure defines a "grievable" issue as a matter which "affect[s] the grievant personally" and relates to

---

[6] Rountree was unable to bring copies of all exhibits to the hearing, but submitted additional documents thereafter. (See ECF Nos. 66 ("List of Copies Defendants Omitted") and 74 (additional exhibits for hearing)).

5

institutional or VDOC procedures, actions of individual employees or offenders, reprisals for filing grievances, or "conditions of care or supervision within the authority of the [V]DOC." OP 866.1(IV)(L) (Dec. 2010).[8]

The grievance procedure provides many different avenues for an inmate to bring an issue to the attention of prison staff. Generally, the inmate must first attempt to resolve the issue by submitting an informal complaint, but if quick relief is necessary, the inmate may immediately submit an emergency grievance. Ultimately, the inmate must reduce her complaint to a regular grievance within 30 days of the incident, submit it to prison staff with proper attachments, and if not satisfied with the outcome, appeal it to the highest possible level. A detailed description of this process is necessary to understand Rountree's failure to comply with her obligation to pursue her grievances through the proper channels, and thus, to exhaust her administrative remedies.

### 1. The Informal Complaint

An inmate must attempt to resolve her complaint "informally" with staff at the facility before filing a regular grievance. OP866.1(V). Inmates typically document the informal complaint on a written form and submit it to the appropriate department within the prison. Id. The informal complaint is recorded as received, and the inmate is given a receipt. Id. at (V)(A)(3). Prison staff must address an informal complaint promptly to allow the inmate time to file a regular grievance within the prescribed 30-day period. The inmate may file a regular grievance regarding the issue if staff have not responded to the informal complaint within 15

---

[8] Both parties have submitted versions of OP866.1 from 2007 and 2010. Neither party, however, has identified any substantive difference between the versions that is relevant to the issues before the court, and the court finds none. Because the vast majority of the remedies documents Rountree submits were filed while the 2010 version was in effect, this opinion will cite the provisions of that version.

days by submitting the regular grievance form and attaching the informal complaint or receipt as proof of having complied with the informal complaint process.  Id. at (V)(A)(2).

### 2.  The Regular Grievance

A  VDOC inmate exhausts her administrative remedies by filing a regular grievance form, and appealing any adverse decision to each available appellate level.  See OP 866.1(VI) An inmate initiates a regular grievance by submitting the grievance at Level I on an appropriate form within 30 days of the event giving rise to her grievance.  OP 866.1(VI)(A)(1).  The staff reviewer may determine the grievance to be "founded" and resolve the issue.  In that event, the grievance is closed, and the inmate must file a new grievance if she is not satisfied with the resolution.  Should the staff reviewer determine the grievance "unfounded," the inmate must appeal that holding to Level II, the regional administrator.  Thereafter, the inmate may appeal an adverse decision from the regional administrator to Level III, the VDOC Chief Correction Operation or the Director if an appeal is available for that particular grievance.  To exhaust administrative remedies for a regular grievance, the inmate must appeal an adverse or unfavorable ruling to the highest available appellate level.

An inmate may submit only one issue in a regular grievance, but the procedure does not limit the number of grievances an inmate may file.   The inmate must file a regular grievance form with a description of the grievance raised.  The form is submitted along with documentation of the attempts to resolve the issue informally.  Id. at (VI)(A).  The inmate files a regular grievance with the designated Institutional Ombudsman/Grievance Coordinator through the inmate mail system, who then stamps the grievance as received, and if it meets the criteria for acceptance, logs it to the grievance books and provides the inmate a receipt within two days.  Id. at (VI)(A) and (B).  A grievance rejected by the ombudsman at intake is returned to the inmate

within two working days, indicating the reason for rejection on the back of the grievance form. Id.  The ombudsman keeps a copy of all returned regular grievance forms for each inmate.  Id. An inmate may seek review of a decision to reject a regular grievance at intake by sending the original form and attachments, within 5 calendar days of receipt, to the Regional Ombudsman. This is the only level of review for a grievance rejected at intake.  Id.

The facility ombudsman or his designee receives all regular grievances accepted at intake.  The ombudsman then reviews the grievance, directs any necessary investigation, and drafts a written response.  Id. at (VI)(C).  This is commonly known as a Level I review.  Before the Level I response to the regular grievance issues, the warden or his designee should ensure that an appropriate investigation and remedy occurred within the prescribed 30-day time limit. Id.  The inmate has five days from receipt of a response at Level I to appeal to the next level of review.  Id. at (VI)(D)(6).  If the inmate does not receive a timely response at any stage of the procedures, the grievance then qualifies for appeal to the next level.  Id. at (VI)(D)(5).

### 3.  Emergency Grievances and Requests for Services

VDOC regulations also provide inmates with other request forms to use, depending on the nature of the inmate's issue.  An emergency grievance allows an inmate to seek prompt action to address a situation or condition that may subject the inmate to an immediate risk of serious personal injury or irreparable harm.  OP 866.1(III) & (VII).  An inmate may submit an emergency grievance at any time to any prison staff member, who must investigate the circumstances described.  Id. at (D).  If responding to the emergency grievance requires the recipientofficer to leave the inmate's location , the prison staffer should complete and give the inmate the receipt section from the bottom of the form.  Id. at (C).  Staff must respond to an emergency grievance within eight hours.  Id. at (F).

An emergency grievance is not a step in the regular grievance procedure, as it merely provides a special procedure to seek quick relief to a particularly harmful situation. The OP does not allow an inmate to appeal a finding that the emergency grievance did not present an emergency. Rather, the inmate may file an informal complaint about the incident itself, to complain that the emergency grievance response was late or someone's actions caused her injury; once she receives an informal complaint response, she can then proceed through the regular grievance procedure and levels of review under the OP. Thus, the mere denial of an emergency grievance does not constitute exhaustion under § 1997e(a).

Inmates may also use access to the Inmate Mail System ("IMS") to request services or consultations with prison officials about their concerns. The request for services is not a required step in the regular grievance procedure. However, an inmate may file a grievance under OP 866.1 and pursue appropriate review relating to the response received to a request for services. Thus, denial of a request for services does not constitute exhaustion under § 1997e(a).

All VDOC inmates receive an orientation to the grievance procedures each time they arrive at a new facility. This orientation includes receiving a written copy of the grievance procedure, information about where to obtain grievance forms and the process for submitting grievances and the appeals process. Id. at (IV)(A). FCCW distributes to new inmates an offender handbook containing instructions for utilizing the grievance procedures. The facility also posts grievance procedure directions in each wing of the prison and in the law library. During the period of time at issue in this lawsuit, the former FCCW grievance coordinator offered to meet with Rountree and clarify the various remedy forms and how to properly complete them.

**B. Defendants' Evidence of Rountree's Failure to Exhaust**

Defendants presented testimony from Paula Soukup, former FCCW grievance coordinator, and Karen Stapleton, FCCW operations manager. The FCCW grievance records for Rountree reflected that she did not pursue a properly filed regular grievance through Level I and Level II of the OP 866.1 procedures as to any of the issues raised in the complaint before she filed her § 1983 action in late November of 2011. Soukup found Rountree filed seven regular grievance forms between 2009 and 2011 regarding the issues in this lawsuit, and she explained that Rountree did not either properly file or exhaust her appeals under OP 866.1 as to each grievance. (ECF No. 64, Exs. 3-9.). A review of each grievance follows.

### 1. Gym Equipment Access

Defendants' Exhibit 3 consists of an informal complaint and regular grievance form, both dated in December 2011, in which Rountree asked for the same access to recreation equipment that VDOC's male prisoners have. The back of the informal complaint form indicates that prison staff did not accept the complaint because it was a "request for services" and advised Rountree to submit her request through the inmate mail system. Rountree nevertheless filed a regular grievance on the issue which the warden denied at the Level I review, which decision the regional ombudsman upheld on Level II review. While Rountree's appeal of the intake decision technically completed her available remedies regarding the rejection of her regular grievance form, this paper trail did not constitute proper exhaustion of Rountree's recreation issue under OP 866.1. Rather, the rejection of an informal complaint as a request for services requires Rountree to submit a proper request for services through the inmate mail system. Only then, if the request for services is denied, does Rountree have the opportunity to pursue her claim through the informal complaint and regular grievance process.

### 2. Mail Delivery

Defendants' Exhibit 4 consists of Rountree's December 1, 2009 informal complaint form, stating that on November 25, 2009, officers did not deliver mail to her building. This informal complaint form was logged, and Ms. Cox responded that November 25 was a state holiday, beginning at noon, which was the reason officers did not distribute inmate mail that afternoon. Rountree's subsequent regular grievance form made similar allegations and asked that FCCW mail service not be provided by FCCW employees. This regular grievance was rejected at intake because it was a "group grievance." The grievance does not identify how the failure to deliver mail affected Rountree personally, as required by the OP 866.1 definition of proper grievance topics. The record reflects no evidence that Rountree appealed the intake decision or resubmitted a personal grievance about this same mail problem.

### 3. Access to Computer/Typewriter.

Defendants' Exhibit 5 consists of an informal complaint made by Rountree on November 4, 2010, in which she requested that she should have access to a word processor or typewriter. Rountree complained that she needed this equipment to protect her right to access the court, because staff had rejected an earlier complaint because of her handwriting. Staff rejected this request, stating that her prior complaint was rejected because the carbon copy of the form was faint, not because of her handwriting. Rountree then filed a regular grievance, complaining that this was a "non-response" and asking for the opportunity to purchase a typewriter or word processor and printer. Staff rejected the regular grievance, Soukup testified, because the regular grievance differed from the relief requested in the informal complaint, the grievance raised more than one issue, and the grievance was a request for services. The evidence does not reflect that Rountree appealed the intake decision.

### 4. Mail Delivery Complaint

Defendants' Exhibit 6 is an informal complaint from Rountree dated January 20, 2011, complaining that she had just received a notice to renew her yoga journal subscription before October 2010.  She demanded to know the policy that allowed FCCW's mailroom to hold mail for so long.  The response to the informal complaint form indicated that FCCW received the notice in its mailroom on January 19 and further stated that FCCW has "no control over its whereabouts prior to when FCCW receives it."  Rountree's regular grievance form raising the same complaint was rejected at intake as non-grievable because it concerned "[m]atters beyond the control of the [VDOC]," and she did not appeal that decision.

### 5. Mail Delivery of Prison News Magazine

Defendants' Exhibit 7 is an informal complaint dated January 20, 2011, in which Rountree complained that she did not receive the November 2010 issue of the monthly Prison News publication and asked why the mailroom was holding her magazine.  Staff responded on January 28, 2011, stating that the mailroom was not holding any magazine.  Rountree filed a regular grievance on February 6, 2011, complaining about nondelivery of magazines and demanding to have mail operations separate from FCCW operations.  Staff rejected the regular grievance at intake because Rountree provided insufficient information regarding her complaint.  The response directed Rountree to set forth on the grievance form itself the month she claimed she did not receive her magazine.  The evidence does not reflect that Rountree resubmitted the grievance with the additional information or that she appealed the intake decision.

### 6. Failure to Receive Yoga Magazine

Exhibit 8 contains an informal complaint form and subsequent regular grievance form that Rountree filed in January and February 2011, complaining that she had not received the

November and December 2010 issues of a yoga publication.  Officials responded that her regular grievance was not timely filed, that it did not provide sufficient information about her complaint, and that because the magazines were never received by the FCCW mailroom, the matter was not grievable.  Prison officials had no record that Rountree appealed this intake decision.

### 7.   Religious Books

Finally, in Exhibit 9, defendants present an informal complaint form that Rountree filed on February 6, 2011, complaining that on January 20, 2011, Sgt. Horn had held religious books mailed to Rountree instead of sending the books to the chaplain in accordance with normal procedures.  The informal complaint response, dated February 14, 2011, indicated that Horn held the books for clarification because Rountree had not followed ordering procedures.  Rountree then filed a regular grievance form on February 26, 2011, which was rejected at intake as untimely filed, because she submitted it more than 30 days after nondelivery of her magazine. Defendants have no record that Rountree appealed the intake decision.

On this evidence, the defendants argue that Rountree did not properly exhaust administrative remedies as to any of the claims raised in her complaint.

## C.  Rountree's Evidence Regarding Exhaustion Efforts

Rountree testified that, for the reasons explained in the detailed chart in exhibit EX57, she raised and exhausted her issues "as much as possible" under the VDOC administrative remedies procedures.  In her testimony and in EX57, Rountree has asserted that each of her issues is exhausted in one of several different ways:  (1) the issue is nongrievable because it is a request for services, a group grievance, or a matter outside the control of the VDOC; (2) the issue was raised as an emergency grievance, a request for services, or an informal complaint and denied with no available appeal; (3) staff lost the informal complaint or grievance; (4) staff lost

her appeal of the intake decision; and (5) after she lost on appeal from the intake decision, she "appealed" by writing letters to higher ranked VDOC administrators. Rountree asserted generally that as to each issue in the complaint, she either exhausted available administrative remedies or she was prevented from doing so. Rountree admitted, and her exhibits document, that many of the administrative remedy forms on which she relies were filed after she submitted the initial complaint in November of 2011. Several of the exhibits pertain to efforts at exhaustion after Rountree filed her first amended complaint in mid-March 2012 and her second amended complaint in mid-April 2012.

Rountree's inmate witnesses testified by video conferencing. Margarite Richardson remembered Rountree complaining about remedy forms or mail items being lost after she placed them in the FCCW inmate mail system. Richardson also testified that the warden advised Rountree to resubmit any remedy form that was lost after mailing. Inmate Dolly Parks remembered that in 2005 or 2006, she would help Rountree prepare a grievance, only to have it returned for insufficient information; the resubmitted grievance would then be rejected as untimely filed. Parks also remembered that at some point between 2008 and 2010, Rountree filed a grievance complaining about an officer's conduct and ended up in segregation; Rountree was unable to follow up on the grievance because of limits on the amount of paperwork she could have in her cell while in segregation.

Inmate Michelle Wagoner assisted Rountree in preparing her exhibits for the hearing. Wagner testified that Rountree's attempts to utilize FCCW grievance procedures were hindered by intake responses or lack of response. Wagner admitted that the inmate should receive a receipt within two days indicating when officials received an informal complaint or regular

grievance.  None of Rountree's witnesses testified with particularity regarding any specific

incident or document related to her exhaustion of administrative remedies.

### III. Applicable Law

It is well established that the PLRA exhaustion requirement in § 1997e(a) is mandatory

and "unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007)

(citing Porter v. Nussle, 534 U.S. 516, 524 (2002)).  Furthermore, § 1997e(a) "applies to all

inmate suits about prison life." Porter, 534 U.S. at 532.  The exhaustion process "allow[s] a

prison to address complaints about the program it administers before being subjected to suit,

reduc[es] litigation to the extent complaints are satisfactorily resolved, and "improve[es]

litigation that does occur by leading to the preparation of a useful record." Jones, 549 U.S. at

219.

An "untimely or otherwise procedurally defective administrative grievance" does not

comply with § 1997e(a).  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  Exhaustion in this

context parallels exhaustion in the administrative law arena, which "means using all steps that

the agency holds out, and doing so properly (so that the agency addresses the issues on the

merits)." Id. at 90 (internal quotation marks and citations omitted).

Courts recognize that an administrative remedy may become "unavailable," "if a

prisoner, through no fault of h[er] own, was prevented from availing himself of it" by the actions

of prison officials.  Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008).  Conversely, a prisoner

does not exhaust all available remedies simply by failing to follow required procedures so that

remedies once available to her no longer are.  Woodford, 548 U.S. at 90.  In short, before

bringing suit in federal court, "a prisoner must have utilized all available remedies in accordance

with the applicable procedural rules, so that prison officials have been given an opportunity to

address the claims administratively." Moore, 517 F.3d at 725 (internal quotation marks and citations omitted).   If the prisoner has followed the rules, she has properly exhausted. Id.  If not, the complaint must be dismissed. [9]

In this case, the defendants bear the burden of proving the affirmative defense that the plaintiff inmate failed to exhaust available administrative remedies regarding her claims.  Jones, 549 U.S. at 212.  Once the defendants present evidence that Rountree did not exhause her administrative remedies, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that she did exhaust or that the administrative remedies were unavailable to her through no fault of her own.  See, e.g., Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (citing Moore, 517 F.3d at 725).

Even where Rountree demonstrates, as to one or more claims, that no administrative remedy was available or that she properly exhausted available administrative remedies, such a claim must be summarily dismissed if it cannot survive the court's required screening under 28 U.S.C. § 1915(e)(2)(B).  Under this section, where the litigant is proceeding *in forma pauperis*, regardless of any filing fee she may have paid, the district court must dismiss the case "at any time" if the court finds that it is frivolous or malicious, fails to state a claim, or seeks damages from someone who is immune from such relief.

---

[9] Six circuit courts of appeals agree that the "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Messa v. Goord, 652 F.3d 305, 308 (2d Cir. 2011); Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010); Bryant v. Rich, 530 F.3d 1368, 1375-77 & n. 15 (11th Cir.2008); Pavey v. Conley, 544 F.3d 739, 74142 (7th Cir. 2008); Wyatt v. Terhune, 315 F.3d 1108, 111920 (9th Cir. 2003). Cf. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005) ("Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion."). Such questions of law arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. See 28 U.S.C. § 636(b)(1)(B) & (C).

To state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Despite her law degree and legal experience, Rountree is not currently a licensed attorney. Therefore, the court holds her to the same pleading standards of other pro se litigants – that is "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). This requirement to construe pro se pleadings liberally does not mean, that the court can ignore a clear failure in the party's submissions or testimony to present "anything that remotely suggests a factual basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

### IV. DISCUSSION

After exhaustive review of the exhibits, including Rountree's EX57, and the parties' testimony, I conclude that Rountree failed to exhaust available administrative remedies as to each of her issues, with few a exceptions, before bringing her second amended complaint. I conclude that Rountree's claims which she failed to exhaust must be dismissed without prejudice under § 1997e(a). I further conclude that as to the issues Rountree properly exhausted or on which she had no available grievance remedy, her complaint must nevertheless be dismissed under § 1915(e)(2)(b) as legally frivolous or for failure to state an actionable § 1983 claim.

### A. Exhaustion Methods

Rountree asserts that all issues are exhausted for a myriad of different several reasons. First, Rountree contends that many of her claims were nongrievable because the issue involved (a) a request for services; (b) a group grievance; (c) a disciplinary matter; (d) a matter outside the control of the VDOC; or (e) a matter requiring specialized procedures outside OP 866.1. Second, Rountree claims that she raised many of her issues in emergency grievances, requests for services, or informal complaints, which were denied, and no appeal of that denial was available. Third, Rountree maintains that prison staff lost several of her informal complaints or emergency grievances or lost the appeals she made from an intake decision. Fourth, Rountree asserts that she appealed any lost intake decision by letter to higher ranking VDOC officials. Finally, Rountree maintains that she raised many issues in timely informal complaints and regular grievances, which she properly appealed through Level II or III of OP 866.1. From the exhibits and the undisputed evidence about 866.1 procedures, with few exceptions, it is clear that these purported methods of exhaustion do not constitute proper exhaustion under OP 866.1.

### 1. Nongrievable matters

Not all concerns an inmate may have about her incarceration meet the definition of a grievable matter under OP 866.1. As Rountree rightly asserts, disciplinary convictions and penalties, group complaints, and conditions outside VDOC control are not the proper subject of a grievance. Issues in these categories cannot be barred from suit under § 1997e(a) for failure to exhaust. I discuss separately my findings and conclusion why Rountree's claims on these issues must be dismissed.

The evidence does not support Rountree's assertion that rejection of an informal complaint or a regular grievance as a "request for services" indicates that the inmate's concern

itself will never be grievable.  A grievance under OP 866.1 must assert a specific problem that the inmate has experienced in a particular time frame because of a certain procedure or policy or because of the actions or omissions of one or more prison officials.  Only with specific incidents and details can prison officials conduct a meaningful investigation and consider appropriate actions in response.  Statements of dissatisfaction with recreation equipment and suggestions for desired improvements to the prison mail system, without the other required elements of a personal grievance, do not qualify as "grievable."  Likewise, such general statements do not offer sufficient factual support for an actionable claim under § 1983.

An inmate can, however, develop grievable complaints related to issues rejected as requests for services or as group complaints, as I found with regard to Defendants' Exhibit 3 (recreation equipment) and Exhibit 4 (mail delivery).  By filing a request for services through the inmate mail system, the inmate can express desire or need for change, provide a specific factual basis for that request, and state the adverse effects she has suffered or will suffer without the change.  If an officer denies that request, the inmate then has 30 days to file, first, an informal complaint and then  a regular grievance, complaining that the particular officer denied her request or failed to alleviate her problem, and explaining how she was affected.  This sequence of remedies allows prison officials a fair opportunity to learn the details of an inmate's problem and to investigate how to solve it or prevent it from occurring in the future before they can be burdened with a lawsuit.

Some inmate requests for services or accommodations require use of specialized procedures outside the inmate mail system.  Rountree's request for the Common Fare Diet or other religious accommodations, for example, required her to seek a decision from the Faith Review Committee ("FRC").  Rountree properly initiated her request for the Common Fare Diet

and then correctly filed an informal complaint and regular grievance complaining about the length of time required to obtain the desired diet.   (See ECF No. 68, Exh. RSJ12.)  Thus, although Rountree could not use OP 866.1 procedures to obtain accommodation of her religious dietary needs, certain aspects of the dietary issue were, nevertheless, "grievable."

In this manner, with the exceptions already noted, I find that administrative remedies and appeals are available for purposes of § 1997e(a) on matters initially characterized as "requests for services" or as otherwise nongrievable.  Therefore, I also find that rejection of an informal complaint or a regular grievance as a "request for services" does not demonstrate exhaustion of any of Rountree's issues.

### 2.  Rejected remedy forms with no appeal

Rountree also asserts that an issue raised and wrongfully rejected on a request for services form, an informal complaint form, or an emergency grievance form is exhausted, because she has no available appeal of that rejection decision.  Exhibit EX57 lists dozens of these forms Rountree has filed on numerous issues, and asserts that rejection of these forms proves exhaustion of the issues the forms presented.  I find no merit to this exhaustion argument. Rountree correctly points out that there is no direct appeal from a decision that an emergency grievance does not meet the definition of an emergency, or when the officer denies her request for services form or rejects her informal complaint at intake because it raises more than one issue, was sent to the wrong official, or does not provide sufficient information.  An emergency grievance, a request for services, or an informal complaint does not exhaust administrative remedies.  OP 866.1 sets out the process for initiating a regular grievance and pursuing the claims through the appeal process.  It is the regular grievance process that exhausts administrative remedies.  Thus, I find that rejection of Rountree's emergency grievances or

informal complaints or denial of requests for servicesdid not constitute proper exhaustion under OP 866.1 for purposes of § 1997e(a), unless followed by a properly filed and exhausted regular grievance.

### 3.  Lost remedy forms

 Rountree claims that many of her remedy forms were lost or never returned to her with a response.  She asserts that because OP 866.1 does not allow for an appeal regarding the loss of an informal complaint or regular grievance and thus, any issue she raised in a form that was subsequently lost is exhausted for purposes of § 1997e(a).

This argument flies completely afoul of the spirit of the exhaustion requirement as a means to allow prison officials to solve problems before being sued over them.  Moreover, the receipt requirements for logged informal complaints and regular grievances provides the inmate with recourse.   If she places a form in the facility mail, but does not receive a receipt for that form within two days, she can resubmit the form.   If the inmate has a receipt for an informal complaint that is subsequently lost, she may file a regular grievance and attach the informal complaint receipt as proof of her attempt at informal resolution.  Similarly, if Rountree received a receipt for a regular grievance which was later lost, she could have appealed the issues raised in the lost grievance to the next level.  For these reasons, I find that the alleged loss of an informal complaint or regular grievance did not constitute exhaustion of the issue raised on those complaints and grievances..

### 4.  Lost appeal forms

Rountree complains that many times when she mailed an appeal of an intake decision or an appeal after denial of a regular grievance, those appeals simply disappeared.  She asserts that when such losses occurred, she had then exhausted available administrative remedies.

I find no merit to this argument.  While OP 866.1 does not include a receipt requirement for submitted appeals of regular grievance intake decisions or Level I grievance responses, the inmate has recourse when one of these appeals is lost.  She can rewrite and resubmit the regular grievance form.  If she corrects the deficiency and her new regular grievance is accepted, the lost intake appeal becomes moot.  If the rewritten regular grievance form is rejected, she can file a new appeal of that intake decision.   On the other hand, if the inmate does not receive a response to a regular grievance appeal within the allotted time, whether because the paperwork got lost or an official delayed or did not provide a response, the inmate may proceed to the next level of review under OP 866.1.  With these alternative methods available to remedy the loss of an appeal, I FIND that none of Rountree's issues in this lawsuit is exhausted based on her assertion that her appeal paperwork was lost.

### 5.  Self-designated appeals

Rountree's exhibits include her attempted appeals of rejected remedy forms or appeals, outside the established OP 866.1 procedures.  (See, e.g., ECF No. 68, Exh. RSJ5; ECF No. 69, Exh. EX2.)  She bundled several rejected forms and sent them to a VDOC administrator, arguing that the intake and appeal decisions were incorrect and should be overturned.   Manufacturing her own administrative remedy steps in this manner does not constitute proper exhaustion for purposes of § 1997e(a).  Woodford, 548 U.S. at 90.  Accordingly, I find that Rountree has failed to exhaust those claims in which she attempted to appeal outside of the VDOC established administrative procedures.

### 6.  Informal complaint, regular grievance, and appeal

After careful review of the evidence, I find that defendants have proven by a preponderance that, before filing her initial complaint in November 2011, Rountree did not

follow the established procedure under OP 866.1 (informal complaint, regular grievance, and appeal to Level II) as to any of the issues raised in that complaint. During the pendency of this action, however, Rountree continued to utilize administrative remedies.

I find that by the time Rountree filed her second amended complaint in April of 2012, Rountree had followed the required steps of exhaustion under OP 866.1 as to one issue: her complaint that she could not keep her prayer rug out at all times (RSJ13), which she exhausted in February of 2012. (See ECF No. 68, Exh. RSJ13.) Because Rountree completed exhaustion of the prayer rug issue before filing the second amended complaint in April 2012, which the court accepted, I consider this issue as exhausted under § 1997e(a), and discuss separately the reasons that Rountree's claim on this issue must, nevertheless, be dismissed.

After filing the second amended complaint, Rountree completed OP 866.1 procedures through Level II on her claim that officials delayed her request for the Common Fare Diet, completed in (RSJ12), completed in May of 2012; and through Level III, regarding her request for approval of yoga mats as personal faith items, completed in June of 2013. (See ECF No. 67, Exh. EV29; ECF No. 68, Exh. RSJ12.) I find, however, that this belated exhaustion of administrative remedies did not comply with § 1997e(a), which mandates that the plaintiff complete the exhaustion process *before* bringing suit. Jones, 549 U.S. at 211. ("[U]nexhausted claims cannot be brought in court."). Therefore, I conclude that Rountree cannot proceed with a claim in this civil action on any claim regarding the alleged delay in approving her to receive the Common Fare Diet and her request for approval of yoga mats as personal faith items, and I RECOMMEND dismissal of these claims under § 1997e(a).

**B. Exhausted Issues**

As stated, I find that Rountree has exhausted certain issues for purposes of § 1997e(a), either because the issue is not grievable or because she completed the OP 866.1 steps through Level II before filing the second amended complaint.  Rountree filed the action, *in forma pauperis*, as she submitted it without prepaying the filing fee.   Although she later submitted the $350 fee, she thereafter applied for and was granted *in forma pauperis* status under § 1915(b). (ECF No. 14.)  Therefore, her complaint is subject to screening under § 1915(e).  See 1915(e)(2)(B)(i) & (ii) ("*Notwithstanding any filing fee, or any portion thereof, that may have been paid,* the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious or fails to state a claim a claim on which relief may be granted") (emphasis added).   Moreover, other code sections allow the court to dismiss a prisoner's civil action regarding prison conditions at any time if the court is satisfied that the action is frivolous, malicious, or fails to state a claim.  See 28 U.S.C. § 1997A(b)(1) and 42 U.S.C. § 1997e(c).

For various reasons, Rountree's complaint states no actionable claim against the defendants on any of these exhausted issues.

**1.  Disciplinary proceedings**

The parties agree that when an inmate is convicted of a disciplinary charge, the proper avenue by which she may challenge the decision of the hearing officer is through an appeal to the warden and then to the regional director, if the charge is a more serious one.  The OP 866.1 informal complaint/regular grievance procedures are not designed for this purpose.  Therefore,

any claim in Rountree's complaint regarding the outcome of a disciplinary hearing would not be barred under § 1997e(a) because she failed to utilize the OP 866.1 remedies on that issue.

Rountree's complaint, however, does not assert a claim challenging the validity of a disciplinary conviction. Indeed, the complaint does not describe any specific disciplinary charge on which Rountree was convicted or identify defendants involved in the disciplinary proceedings.[10] Thus, I find that Rountree has not presented facts sufficient to state any claim related to prison disciplinary proceedings, West, 487 U.S. at 48, and accordingly, I RECOMMEND summary dismissal of such claims under § 1915(e)(2)(b).

### 2. Group complaints

The parties agree that inmates cannot assert group complaints through the informal complaint and regular grievance procedures under OP 866.1. Rountree's exhibits reflect that many of her informal complaints and regular grievances were rejected at intake as "group grievances," concerning such matters as exercise equipment, group religious services, mail delivery, and group punishment. (See, e.g., ECF No. 67, Exh. EX38, EX13, EX60; ECF No. 68, Exh. RSJ5, RSJ8; ECF No. 69, Exh. EV40.) Technically, because no administrative remedy was available by which Rountree could "exhaust" her group complaints, these complaints are not barred from suit under § 1997e(a).[11]

---

[10] Rountree's many exhibits include paperwork related to disciplinary proceedings and to "ICA" hearings related to her placement in segregation. (ECF No. 69, Exh. EX42; ECF No. 68, Exh. RSJ25 & RSJ26.) All of these hearings occurred before November of 2009. A § 1983 claim based on events that occurred in Virginia must be brought within two years from the time when the action accrues, or it is barred by Va. Code Ann. § 8.01-243(a), Virginia's statute for general, personal injury claims. See Owens v. Okure, 488 U.S. 235, 239-40 (1989). Thus, any § 1983 claim concerning the hearings mentioned in Rountree's exhibits is time-barred under § 8.01-243(a).

[11] The court notes that Rountree's personal problems with the same issues she has raised as group complaints would be grievable and must, therefore, be properly exhausted under OP 866.1.

In essence, most of Rountree's complaint seeks relief for all inmates at FCCW. Her prayer for relief chronicles many changes she seeks which she believes will improve prison life at FCCW and facility operations. Rountree seeks various forms of declaratory relief and an injunction ordering FCCW to make specific changes to numerous programs and procedures, from law library scheduling and procedures to assignment of roommates and prison jobs to the selection process for new employees. Rountree asks the court to direct prison officials to change the way FCCW is run as a prison facility purportedly for the good of all its inmates.

These group claims fail under § 1915(e)(2)(b). Rountree simply has no standing to vindicate the rights of all FCCW prisoners, as she is attempting to do. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (a litigant "has standing to seek redress for injuries done to h[er], but may not seek redress for injuries done to others"); Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir.1981) (holding that pro se prisoner may not serve as a "knight errant" for other inmates, but may only seek to enforce his own rights). Moreover, prison administration is not a court function. A court's inquiry under § 1983 into prison management is strictly limited to whether a particular system violates the litigant's constitutional rights, and, absent such a showing, courts must leave matters of prison administration to the expertise of prison officials. See Bell v. Wolfish, 441 U.S. 520 (1979); Block v. Rutherford, 468 U.S. 576 (1984) (noting that courts cannot substitute their own judgment on institutional management for that of prison officials).

For these reasons, I find that any group claims for relief raised in Rountree's complaint, while exhausted under § 1997e(a), fail to present any actionable claim under § 1983, and I RECOMMEND that any such attempted claims be summarily dismissed as frivolous under § 1915(e)(2)(b).

### 3.  Matters outside VDOC control

Rountree complains that she has not received some issues of publications to which she subscribes and that she sometimes does not receive personal or legal mail she believes was mailed to her. (See, e.g., ECF No. 67, Exh. EXMM.) Prison officials have informed her that because VDOC officials do not have any control over the efficiency of the United States mail service in delivering her mail to FCCW, problems with that mail service are nongrievable.[12] For this same reason, I find that Rountree's vague complaints about federal mail service do not support any actionable § 1983 claim against any of the defendants, as she fails to state facts on which she could prove that any of them was personally involved in delivery of mail to FCCW. West, 487 U.S. at 48 (requiring § 1983 litigant to show that alleged deprivation resulted from conduct committed by a person acting under color of state law). Therefore, I RECOMMEND summarily dismissal under § 1915(e)(2)(b) of any claims concerning United States mail service.

### 4. Properly exhausted religious practice claim

I have found that Rountree properly exhausted one of her religious rights issues before filing the second amended complaint, namely, her complaint that she could not keep her prayer rug out at all times. Of the 135 paragraphs in Rountree's 47-page complaint, only Paragraph 44 mentions any facts in support of this claim. This paragraph states, in pertinent part:

> Defendants' course and conduct of actions and omissions intentionally or effectively harmed and discriminated against Plaintiff, who, as a Buddhist has been prevented and hindered in the sincere practice of her religious tenets. . . . Plaintiff has been specifically told that she may not pray during the "count times" even though she makes no sound or movement in doing so. Plaintiff has been denied the use of religious objects, such as a prayer rug, unless she prays in a manner approved by Warden Phyllis Baskerville.

---

[12] Officials have addressed Rountree's complaints about mail service within the prison, however, as grievable. Thus, claims regarding prison mail delivery must be properly exhausted under OP 866.1.

Compl. 25-30 (ECF No. 31).  Although Rountree does not reference in the complaint the specific legal right allegedly violated by the prayer rug restrictions, I liberally construe her complaint as bringing this claim under both the First Amendment and RLUIPA.

The First Amendment protects an inmate's right to the free exercise of sincerely held, religious beliefs.  U.S. Const. amend. I; <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1977).  It is well established, however, that "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."  <u>Bell</u>, 441 U.S. at 545.  To state a § 1983 claim that prison officials violated her First Amendment right to free exercise of religion, Rountree must prove that she held a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened her exercise of that belief.  <u>Hernandez v. Comm'r</u>, 490 U.S. 680, 699 (1989).  The Supreme Court defines a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," <u>Thomas v. Review Bd. Of Ind. Employment Sec. Div.</u>, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand."  <u>Sherbert v. Verner</u>, 374 U.S. 398, 404 (1963).

Even a prison policy that substantially burdens an inmate's ability to practice her religious beliefs nevertheless withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987); <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987).  Furthermore, inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions.  <u>See</u> <u>Lovelace v. Lee</u>, 472 F.3d 174, 194 (4th Cir. 2006).

By enacting RLUIPA, Congress heighted protection of inmates' religious exercise to some degree. Similar to a First Amendment claim, a RLUIPA claim requires a showing that prison officials knowingly took actions or enforced a policy that placed substantial pressure on the inmate to alter her religious practice or violate her beliefs. See Lovelace, 472 F.3d at 187 (adopting definition of substantial burden in Thomas, 450 U.S. at 718); id. at194 (finding that RIUIPA does not reach negligent violations of inmates' religious practices). If the inmate proves a substantial burden, then the defendants must come forward with evidence demonstrating that the policy furthers a compelling state interest by the least restrictive means. Cutter v. Wilkinson, 544 U.S. 709, 723 (2005).

Rountree's sparse allegations in the complaint simply do not meet either of these demanding standards. The complaint does not state facts to support Rountree's conclusory assertion that the lack of a prayer rug during count procedures substantially pressures her to violate her beliefs that she is to be in prayer at all times. Indeed, she provides no religious basis for her asserted belief that she needs a prayer rug to pray, and no evidentiary basis to conclude that she cannot participate in other activities at FCCW without having a prayer rug with her. Moreover, Rountree fails to state facts on which any of the defendants could have known that a rule prohibiting the use of the prayer rug during count procedures substantially burdened her religious practice. Officials' inadvertent actions that infringe on her religious practices do not violate either the First Amendment or RLUIPA.

I find that Rountree's complaint fails to state facts on which she could establish important elements of her claims under the First Amendment and RLUIPA, and thus, I RECOMMEND that these claims be summarily dismissed under § 1915(e)(2)(b).

## V. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

For the reasons stated, based on the evidence regarding the exhaustion issue as adduced at the evidentiary hearing conducted on September 5, 2013, I PROPOSE the following findings of fact and conclusions of law regarding Rountree's claims in this action:

1. A finding of fact that the following issues from Rountree's complaint are not subject to the VDOC grievance procedures: disciplinary charges against Rountree in 2007 and in May 2009, and problems with the United States Postal Service mail delivery;

2. A finding of fact that with the exception of the issues listed in Paragraph 1, Rountree failed to exhaust available administrative remedies as to any of the events or conditions about which she complains before filing the original complaint;

3. A finding of fact that Rountree failed to demonstrate that any VDOC policy or action by any defendant or prison official prevented her from exhausting administrative remedies or made such remedies "unavailable;"

4. A finding of fact that, during the pendency of this lawsuit, Rountree properly exhausted administrative remedies as to the following religious rights complaints: failure to approve yoga mats as faith items; delay in receipt of the Common Fare Diet; and denial of her request to have a prayer mat on the floor during count procedures;

5. A conclusion of law that, based on her failure to properly exhaust administrative remedies, Rountree is barred under § 1997e(a) from proceeding with all of her claims except those relating to the issues listed in Paragraphs 1 and 4;

6. A conclusion of law that Rountree is barred under § 1997e(a) from proceeding with any claim regarding her request for approval of yoga mats as faith items or delay in approval of her request for the Common Fare Diet, because she properly exhausted administrative remedies on this issue only *after* filing the second amended complaint;

7.   A finding of fact and conclusion of law that Rountree's complaint fails to allege
     sufficient facts to state any actionable claim under § 1983 or RLUIPA as to any of the
     properly exhausted issues listed in Paragraphs 1 and 4, making these claims subject to
     dismissal under 28 U.S.C. § 1915(e)(2)(b);

8.   A conclusion of law that, based on my other findings and conclusions from a
     preponderance of the evidence adduced at the evidentiary hearing that Rountree's claims
     are appropriately dismissed without prejudice under § 1997e(a) or § 1915(e)(2)(b); and

9.   A conclusion of law that Defendant Baskerville's motion for summary judgment is moot.

## VI. RECOMMENDED DISPOSITION

Based on the proposed findings of fact and conclusions of law, I **RECOMMEND** that
Rountree's complaint be **DISMISSED** without prejudice, under 42 U.S.C. § 1997e(a), based on
her failure to exhaust administrative remedies properly as to the majority of her claims, or under
28 U.S.C. § 1915(e)(2)(b), for failure to present sufficient factual matter to state any actionable
federal claim against the defendants on issues for which she properly exhausted administrative
remedies. I further **RECOMMEND** that Defendant Baskerville's motion for summary judgment
be dismissed as moot.

The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this
case to the Honorable James C. Turk, United States District Judge. Both sides are reminded that
pursuant to Rule 72(b) they are entitled to note any objections to this Report and
Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of
law rendered herein by the undersigned not specifically objected to within the period prescribed
by law may become conclusive upon the parties. Failure to file specific objections pursuant to
28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions

reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The clerk shall send a copy of this report and recommendation to plaintiff and to counsel of record for the defendants.

Enter:  March 24, 2014

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge